23773

The STATE, Respondent v. David C. ROCHEVILLE, Appellant.
(425 S.E. (2d) 32)

Supreme Court

*Richard W. Vieth,* Spartanburg, *Sally G. Calhoun,* Greenville, and *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *Norman Mark Rapoport,* Columbia, and *Sol. Holman C. Gossett, Jr.,* Spartanburg, *for respondent.*

Heard Oct. 12, 1992; Decided Jan. 4, 1993.

Reh. Den. Feb. 2, 1993.

TOAL, Justice:

This is an appeal of a capital trial. The defendant, David Rocheville, was found guilty of armed robbery, kidnapping, and the murder of Alex Hopps and James Todd Green, two employees of Westgate Mall Cinemas. Rocheville was sentenced to life in prison for the murder of Hopps, although the jury found the aggravating circumstances that two persons were murdered pursuant to one scheme or course of conduct and that Hopps was murdered during the course of an armed robbery. Rocheville was sentenced to death for the murder of Green, the jury having found that the murder was committed during an armed robbery and a kidnapping. Rocheville appeals his convictions and sentence of death.[1] We affirm.

## FACTS

The victims were the only employees of the theater on duty the night they were murdered. Green was the assistant manager and Hopps was an usher. As the assistant manager, the only employee with the combination to the safe, Green was expected to make a nightly deposit. Hopps was expected to follow Green as a security precaution.[2] Although several movies were still in progress, the box office and concession stand had closed around 10:30 p.m. Before the cashier left for the night at 10:40 p.m., she saw Rocheville in the theater lobby. Around this time, the son of the theater's manager, who was also an employee of the theater, and his girlfriend were sitting in the theater's parking lot. They saw a van pull

---

[1] Under South Carolina law, capital cases are conducted in a bifurcated trial. S.C. Code Ann. § 16-3-20(B) (Supp. 1991). In the first phase, guilt or innocence is established. In the second phase, evidence in extenuation, mitigation or aggravation of the punishment is presented for the jury's consideration. The jury, if an aggravating circumstance is found beyond reasonable doubt, may render a verdict recommending death. The defendant must then be sentenced to death by the trial judge provided he or she has found as an affirmative fact that the death penalty was warranted under the evidence of the case and was not the result of prejudice, passion, or any other arbitrary factor. S.C. Code Ann. § 16-3-20 (C) (Supp. 1991).

[2] Rocheville, a former assistant manager of the theater, was aware of the closing procedure of the theater.

up next to victim Green's car. As they watched, Rocheville got out of the van and appeared to be looking around inside Green's car. Rocheville returned to the van at one point and appeared to be talking to someone in the back of the van which remained parked nearby. Rocheville then rode off in the van with an unidentified driver. The manager's son went into the theater and discovered no employees present. A search revealed the body of Hopps outside the back door of the theater. He had been shot in his left temple with a medium to large caliber weapon. Additionally, approximately three thousand dollars was missing from the theater safe.

Rocheville was taken into custody early the following morning. After being advised of his rights, Rocheville led the police to the body of Green, the whereabouts of which had been unknown until that time. Green's body was found in a ditch alongside the road several miles from the theater. Green had been shot in the back of the head as he knelt in the ditch with his hands clasped.

Prior to the murders, Rocheville had sold a .44 Magnum revolver to another former employee of the theater, Richard Longworth.[3] Green's wound was consistent with that of a .44 Magnum revolver. Upon questioning, Rocheville admitted he was at the theater that night with Longworth. However, he maintained that Longworth shot Hopps while Rocheville watched the movie. He also claimed Longworth robbed the safe. Rocheville admitted searching Green's car for money but alleged it was at Longworth's direction. Rocheville also admitted he left the mall with Longworth and Green. When they stopped along the side of the road, Rocheville maintained that Longworth turned to Rocheville, handed him the gun and said "it's either you or him." Rocheville then took Green out of the van and shot him in the back of the head.

## ISSUES PRESENTED

Does *State v. Torrence*, 305 S.C. 45, 406 S.E. (2d) 315 (1991) (Toal, A.J., concurring), which abolished the doctrine of *in favorem vitae* review in capital cases, apply in a criminal pro-

---

[3] Longworth was charged with the murders in addition to Rocheville. Longworth was tried separately, convicted, and sentenced to death for the murder of both victims.

ceeding in which the defendant was indicted before but tried after the filing of *Torrence?*

Did the trial judge err by refusing to charge voluntary manslaughter based on Rocheville's alleged duress?

Was the testimony of the victims' parents admitted in error as impermissible evidence of victim impact?

## LAW/ANALYSIS

### Application of *Torrence*

Rocheville raises several issues on appeal which were not raised below. In prior capital cases, we, adhering to the doctrine of *in favorem vitae,* reviewed the entire record for legal error. In *Torrence,* we abolished the doctrine and held that "a contemporaneous objection is necessary in all trials beginning after the date of this opinion to properly preserve errors for our direct appellate review." *Id.* at 69, 406 S.E. (2d) at 328. Rocheville argues that although *Torrence* abolished *in favorem vitae* prior to Rocheville's trial, the doctrine should still be applied to this case because Rocheville was indicted prior to the filing of the *Torrence* opinion. We adhere to *Torrence* and hold that the doctrine remains available only to defendants whose trials commenced before *Torrence* was filed.

Rocheville raises an issue for the first time on appeal that illustrates one of the reasons why this Court abolished the doctrine. Rocheville asserts that the record fails to disclose a knowing and intelligent waiver of his right to address the jury at the close of the guilt phase and to testify in the sentencing phase. Under *in favorem vitae,* the omission of knowing and intelligent waiver on the record mandated reversal. *State v. Orr,* 304 S.C. 185, 403 S.E. (2d) 623 (1991); *State v. Reed,* 293 S.C. 515, 362 S.E. (2d) 13 (1987). *Overruled on other grounds by Torrence, supra.* Thus, a defendant would be encouraged to purposely refrain from raising the issue of obtaining a waiver in the record. This incentive to "sandbag" was cited by *Torrence* to be the primary danger associated with *in favorem vitae. Torrence,* 305 S.C. at 64, 406 S.E. (2d) at 326.

*In favorem vitae* review of the waiver issue would preclude this Court from analyzing whether the failure to obtain a knowing and intelligent waiver on the record

was harmless error. The trial record is silent on the possibility that the defendant was, in fact, adequately informed of his rights, and did, for strategic reasons, desire to waive those rights. Review of this issue is better left to a postconviction relief proceeding where the facts surrounding the trial can be fully explored. *State v. McKinney*, 278 S.C. 107, 292 S.E. (2d) 598 (1982).[4] Accordingly, we do not address any issues raised on appeal which were not raised in the trial court.

### Failure to Charge Voluntary Manslaughter

Rocheville maintains that the trial court erred in refusing to charge voluntary manslaughter. Although Rocheville admits duress or coercion is not a defense to murder, he maintains that duress may reduce the murder to voluntary manslaughter. Rocheville argues that "fear like passion may so cloud the mind as to eliminate malice."

First, the evidence presented in this case does not support duress. Duress requires evidence showing that "the degree of coercion [was] present, imminent, and of such a nature as to induce a well grounded apprehension of death or serious bodily harm if the act is not done." *State v. Robinson*, 294 S.C. 120, 363 S.E. (2d) 104 (1987). According to Rocheville's confession, Longworth gave the gun to Rocheville and told him it was either Rocheville or Green. When Rocheville held the loaded gun in his hand, the necessary imminent nature of the duress was removed. There was no evidence indicating Longworth had any other weapon readily available in the van although a four-inch kitchen knife and a tire knocker were found under the front seat of Longworth's Grenada car, along with a .44 Magnum revolver. Rocheville could have taken the gun given to him by Longworth and escaped safely with Green. Accordingly, no duress was present at the time of the murder of Green.

---

[4] A notable exception to this general rule requiring a contemporaneous objection is found when the record does not reveal a knowing and intelligent waiver of the right to counsel. *State v. Cash*, 304 S.C. 223, 403 S.E. (2d) 632 (1991). The *pro se* defendant cannot be expected to raise this issue without the aid of counsel. However, even in the case of the failure to show a knowing and intelligent waiver of counsel, the remedy is to remand to the trial court for an evidentiary hearing to determine whether the waiver was, in fact, knowingly and intelligently made unless it is clear that a hearing on remand would serve no useful purpose. *Id.*

Second, duress, as Rocheville concedes, is not a defense to murder. The rationale of the defense of duress is that if the only means of avoiding greater harm is for the defendant to engage in illegal conduct resulting in a lesser harm, he should not be held criminally liable for the illegal conduct. W. McAninch & W. Fairey, *The Criminal Law of South Carolina* 552 (2d ed. 1989). The commission of the crime which results in a lesser harm is therefore justified. However, when the crime is the murder of an innocent person, the choice of two evils rationale is unavailing. The resulting harm, the murder of an innocent person, is at least as great as the threatened harm, the death of the defendant. Rocheville argues duress negates the element of malice and, therefore, should mitigate the punishment so that a charge of voluntary manslaughter would have been appropriate. We find for the same reason as duress is not a complete defense to murder, it cannot be used to mitigate the crime to voluntary manslaughter. *Accord United States v. LaFleur*, 971 F. (2d) 200 (9th Cir. 1991); *State v. Nargashian*, 26 R.I. 299, 58 A. 953 (1904).

We note some states have by statute included intentional killing under duress under the definition of the crime of voluntary manslaughter. *See e.g.*, Minn. Stat. § 609.20 (1987). Our statute defines manslaughter simply as the unlawful killing of another without malice. S.C. Code Ann. § 16-3-50 (1985).[5] With no further statutory definition, this Court has followed the common law definition which requires sudden heat of passion upon a sufficient legal provocation. *State v. Gardner*, 219 S.C. 97, 64 S.E. (2d) 130 (1951). Both legal provocation and heat of passion are required. *State v. Tyson*, 283 S.C. 375, 323 S.E. (2d) 770, *cert. denied*, 471 U.S. 1006, 105 S.Ct. 1873, 85 L.Ed. (2d) 165 (1985). Accordingly, duress does not mitigate murder to voluntary manslaughter under South Carolina law. Our legislature has provided, however, that duress is a statutory mitigating factor to be considered in sentencing. S.C. Code Ann. § 16-3-20(C)(b)(5) (Supp. 1991). Accordingly, we find the trial court did not err in refusing to charge voluntary manslaughter.

---

[5] This statute does not distinguish voluntary from involuntary manslaughter, but involuntary manslaughter is labeled as criminal negligence and is defined as "the reckless disregard of the safety of others." S.C. Code Ann. § 16-3-60 (1985).

### Victim Impact

At the sentencing phase, the State called the father of Hopps and the mother of Green. Both parents testified about their families' reliance on their sons and the boys' dreams and aspirations. Rocheville argues that the admission of this evidence was in violation of South Carolina law.

In *Payne v. Tennessee,* — U.S. — 111 S.Ct. 2597, 115 L.Ed. (2d) 720 (1991), the United States Supreme Court reversed its prior precedent regarding the admission of evidence of a victim's personal characteristics and the emotional impact of the murder on the victim's family in a capital sentencing hearing. The Court held in *Payne* that the Eighth Amendment did not establish a *per se* bar prohibiting the jury from considering "victim impact" evidence. The *Payne* Court also held reference to victim impact evidence in closing arguments was proper. The Court determined the evidence was relevant to the victim's uniqueness as an individual human being and admissible provided it is not so unduly prejudicial that it renders the trial fundamentally unfair. *Id.* at —, 111 S.Ct. at 2608, 115 L.Ed. (2d) at 735. Within these parameters, the *Payne* Court left the admissibility of this type of evidence to the determination of the individual States. *Id.* at —, 111 S.Ct. at 2609, 115 L.Ed. (2d) at 736.

This Court adopted *Payne* as the law of South Carolina in *Lucas v. Evatt,* — S.C. —, 416 S.E. (2d) 646 (1992), and *State v. Johnson,* 306 S.C. 119, 410 S.E. (2d) 547 (1991), *cert. denied,* — U.S. —, 112 S.Ct. 1691, 118 L.Ed. (2d) 404 (1992). We find the admitted victim impact testimony in this case was not unduly prejudicial or inflammatory. This evidence met the allowable purpose of showing the specific harm committed by Rocheville in the murders of Hopps and Green. The testimony presented merely portrayed the victims as unique individuals. We hold it was relevant and proper.

Pursuant to S.C.Code Ann. § 16-3-25(C) (1985), we have reviewed the record and conclude the death sentence was not the result of passion, prejudice or other arbitrary factors, and the evidence supports the jury's finding of the aggravating circumstances. Furthermore, the death sentence is not excessive or disproportionate to the penalty imposed in similar cases. *See State v. Sims,* 304 S.C. 409, 405 S.E. (2d) 377 (1991),

*cert. denied,* — U.S. —, 112 S.Ct. 1193, 117 L.Ed. (2d) 434 (1992); *State v. Lucas,* 285 S.C. 37, 328 S.E. (2d) 63, *cert. denied,* 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed. (2d) 729 (1985), *overruled on other grounds by Torrence, supra.* Accordingly, Rocheville's convictions and sentence are AFFIRMED.

HARWELL, C.J., MOORE, J., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.

FINNEY, A.J., dissenting in separate opinion.

FINNEY, Justice (dissenting):

I respectfully dissent. In my opinion, the admission of victim impact statements should have been precluded by *South Carolina v. Gathers,* the prevailing law of this state at the time of trial.

With regard to *in favorem vitae,* I note with considerable interest the majority's response to the first issue, which is limited to whether or not a defendant in a capital proceeding who is indicted before but tried after *Torrence is* entitled to an *in favorem* review.

After making a statement clearly and concisely holding that a defendant indicted but tried after *Torrence is* not entitled to an *in favorem* review, the majority goes out of its way to justify the abolishment of 200 years of legal precedent. This is accomplished by raising the illusory spectacle of "sandbagging." However, the record contains no evidence addressing this mysterious phenomenon.

Concerning victim impact testimony, the United States Supreme Court held in *Payne v. Tennessee* that if a state chooses to permit the admission of victim impact evidence, the Eighth Amendment erects no per se bar. The majority correctly notes that this Court adopted *Payne* as the law of South Carolina in *Lucas v. Evatt, supra.* However, the majority ignores the fact that at the time of trial, neither *State v. Johnson,* the initial decision of this Court to cite *Payne* with approval, nor *Lucas* had been decided by the Court. This capital trial occurred on July 10-13, 1991, approximately three months before this Court rendered its decision in *Johnson.* Therefore, I am of the view that *Gathers* properly expressed this Court's intention to preclude victim impact testimony at the time this trial was conducted.

For the foregoing reasons, I would hold that the admission of the victim impact testimony was violative of the law of South Carolina at the time of trial. I would reverse and remand for resentencing.