**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DAVID ROCHEVILLE,
Petitioner-Appellant,

v.

MICHAEL MOORE, Commissioner,

South Carolina Department of
Corrections; CHARLES CONDON,
Attorney General, State of South
Carolina,
Respondents-Appellees.

No. 98-23

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Charles E. Simons, Jr., Senior District Judge.
(CA-97-2665-6-6AK)

Argued: January 25, 1999

Decided: March 16, 1999

Before WILKINS, MICHAEL, and TRAXLER, Circuit Judges.

_____

Dismissed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Palmer Freeman, Jr., SUGGS & KELLY LAWYERS,
P.A., Columbia, South Carolina, for Appellant. Donald John Zelenka,
Assistant Deputy Attorney General, Columbia, South Carolina, for
Appellees. **ON BRIEF:** Dorothy L. Fort, Mt. Pleasant, South Caro-

lina; Allan Levin, COZEN & O'CONNOR, Columbia, South Carolina, for Appellant. Charles M. Condon, Attorney General, John W. McIntosh, Chief Deputy Attorney General, Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant David Rocheville filed this petition for habeas corpus relief[1] from his South Carolina convictions for murdering Alex Hopps and James Todd Green and his resulting sentences of life imprisonment and death respectively. See 28 U.S.C.A.§ 2254 (West 1994 & Supp. 1998).[2] The district court denied the petition. Because we conclude that Rocheville has not made a substantial showing of the denial of a constitutional right, we deny his request for a certificate of appealability and dismiss.

_____

[1] Rocheville named Michael Moore, Commissioner of the South Carolina Department of Corrections, and Charles Condon, Attorney General of South Carolina, as Respondents in this action. For ease of reference, we refer to Respondents as "the State" throughout this opinion.

[2] Because Rocheville's petition for a writ of habeas corpus was filed on September 3, 1997, after the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214, amendments to 28 U.S.C.A.§ 2254 effected by § 104 of the AEDPA govern our resolution of this appeal. See Green v. French, 143 F.3d 865, 868 (4th Cir. 1998), cert. denied, 119 S. Ct. 844 (1999). Although Rocheville's state PCR proceedings were decided by the South Carolina Supreme Court after June 18, 1996--the date that South Carolina purports to have satisfied the opt-in provisions--the State does not argue that the provisions of § 107 of the AEDPA (including the more stringent procedural default provisions) apply. See Howard v. Moore, 131 F.3d 399, 403 n. 1 (4th Cir. 1997) (en banc), cert. denied, 119 S. Ct. 108 (1998).

2

I.

Late on the evening of January 7, 1991, the victims were the only two employees on duty at the Westgate Mall Cinemas in Spartanburg, South Carolina. Green, a 22-year-old assistant manager, had the combination to the safe and was expected to deposit the evening's receipts into a local bank after the theater closed. Hopps, a 19-year-old college student who was working as an usher, was to follow Green as a security precaution. Although several movies were still playing, the box office and concession stand closed by 10:30 p.m. Before the cashier left the theater at approximately 10:40 p.m., she observed Rocheville, a former assistant manager at the theater, in the lobby.

At about the same time, an off-duty employee of the theater and his girlfriend were sitting in the parking lot of the theater. They observed a van approach Green's automobile and watched as Rocheville exited the van and looked inside Green's vehicle. Rocheville returned to the van and, after speaking with someone and returning briefly to Green's automobile, left with an unidentified driver. The off-duty employee went inside the theater to inform Green of Rocheville's interest in the vehicle. He found no employees in the theater but located Hopps' body behind the theater near the rear door. Hopps had been shot in his left temple with a medium-to-large caliber firearm. The theater office was a shambles, and approximately $3,000 was missing from the theater safe.

The following morning, Rocheville was arrested and began to supply information to the police concerning the crimes. He provided a series of changing accounts of his actions and those of his accomplice, Richard Longworth. Initially, Rocheville claimed that Longworth had murdered both Hopps and Green and was responsible for robbing the theater. Eventually, however, Rocheville admitted to having murdered Green. In addition, Rocheville led police to Green's body, which had not previously been located, in a ditch several miles from the theater. Green had been shot in the back of the head.

A jury convicted Rocheville of armed robbery, kidnapping, and the murders of Hopps and Green. And, having concluded that Rocheville murdered Green during an armed robbery and a kidnapping, the jury

recommended a sentence of death for Green's murder. Rocheville was sentenced to life imprisonment for Hopps' murder.

The Supreme Court of South Carolina affirmed Rocheville's convictions and sentences on direct appeal, and the Supreme Court denied certiorari. See State v. Rocheville, 425 S.E.2d 32 (S.C.), cert. denied, 508 U.S. 978 (1993). Subsequently, Rocheville brought an action for postconviction relief (PCR) in state court raising numerous issues. The state PCR court determined that a number of the claims were procedurally defaulted. In addition, it found the remaining claims to lack merit and denied Rocheville's petition. The South Carolina Supreme Court denied certiorari.

Rocheville subsequently brought the present petition seeking habeas corpus relief pursuant to 28 U.S.C.A. § 2254, and the State moved for summary judgment. A magistrate judge recommended that the State's motion for summary judgment be granted, concluding that Rocheville offered no basis for habeas relief. The district court adopted the recommendation of the magistrate judge.

II.

South Carolina law provides in pertinent part:

> The circuit courts shall have power to change the venue in all criminal cases pending therein, and over which they have original jurisdiction, by ordering the record to be removed to another county in the same circuit. The application for removal must be made to the judge sitting in regular term.

S.C. Code Ann. § 17-21-80 (Law. Co-op. 1985). Rocheville moved for a change of venue before Judge Luke Brown, who had been appointed by the South Carolina Supreme Court to preside over all aspects of Rocheville's trial. When a motion for a change of venue was made and argued, however, Judge Brown was holding court in Aiken, South Carolina. Prior to argument, Judge Brown acknowledged that the proceedings were not taking place in Spartanburg, where the murders occurred, and asked if Rocheville had any objec-

4

tion. Counsel for Rocheville stated that there was no objection. At the close of the hearing, Judge Brown took the matter under advisement and several days later he entered an order denying the motion for a change of venue while sitting in Spartanburg.

Rocheville argues that Judge Brown lacked jurisdiction to consider the motion, that the remainder of the trial was tainted by the ruling, and hence that he was deprived of due process. He also claims that his trial counsel was ineffective for attempting to waive any objection to the motion being heard in Aiken.

Rocheville, however, raised these arguments for the first time in these § 2254 proceedings in his filings before this court; thus, they are not properly before us. See Spencer v. Murray , 5 F.3d 758, 762 (4th Cir. 1993) (explaining that issue not raised before the district court is not considered by this court). Further, the issues are procedurally defaulted because the state PCR court[3] expressly ruled that they had not been raised timely, and Rocheville cannot demonstrate cause and prejudice or a fundamental miscarriage of justice to excuse his default. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). Finally, the state PCR court held in the alternative that Rocheville's argument lacked merit as a matter of South Carolina law because Judge Brown possessed jurisdiction to hear the venue motion. We have no authority to review that determination of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

III.

Under South Carolina law:

> Whenever any person is charged with murder and the death penalty is sought, the court, upon determining that such person is unable financially to retain adequate legal counsel, shall appoint two attorneys to defend such person in the trial of the action.

_____

[3] Because the South Carolina Supreme Court denied certiorari, the decision of the state PCR court is the last reasoned state court decision. See Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991).

5

S.C. Code Ann. § 16-3-26(B)(1) (Law. Co-op. Supp. 1998).

Rocheville explains that the state trial court found him to be indigent but never appointed counsel for him or made him aware that he was entitled to have attorneys appointed. Rather, Rocheville was represented by one retained attorney whom his parents hired for him. Thus, Rocheville asserts, he was denied due process in violation of the Fourteenth Amendment because the state court failed to obtain his waiver of the statutory right to appointed counsel. Furthermore, Rocheville claims his trial counsel was ineffective for failing to secure appointed counsel.

Rocheville raised these claims in his state PCR proceeding, and that court ruled that the claims lacked merit. It interpreted the statute as not requiring the appointment of counsel when a defendant already has had retained counsel. This ruling is one of state law with which we have no authority to disagree. See Estelle , 502 U.S. at 67-68. Because under state law Rocheville was not entitled to appointed counsel, the state trial court did not err in failing to obtain a waiver from Rocheville, and his retained attorney was not ineffective for failing to secure appointed counsel. Thus, Rocheville's claims that the trial court erred in failing to obtain a waiver of his right to appointed counsel and that his attorney was ineffective in failing to secure additional appointed counsel lack merit.

IV.

South Carolina law provides:

> Notwithstanding any other provision of law, in any criminal trial where the maximum penalty is death or in a separate sentencing proceeding following such trial, the defendant and his counsel shall have the right to make the last argument.

S.C. Code Ann. § 16-3-28 (Law. Co-op. Supp. 1998). This statute has been construed by the South Carolina Supreme Court to require that a capital defendant be provided with the opportunity to make a final, personal argument to the jury at the close of the guilt and sentencing

6

phases of the trial. See State v. Charping, 437 S.E.2d 88, 89 (S.C. 1993). Rocheville maintains that his attorney was constitutionally ineffective in failing to advise him of his right to make the final argument in the guilt phase of the trial and that the trial court deprived him of due process of law by failing to ensure that he waived this right.

The PCR court took testimony on this issue and concluded, based on trial counsel's testimony, that counsel had informed Rocheville of his right to make the final argument at the close of the guilt phase of the trial. "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C.A.§ 2254(e)(1). Rocheville bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

Rocheville has not shown by clear and convincing evidence that the finding of the PCR court that trial counsel informed Rocheville of his right to a final, personal closing argument was erroneous. Trial counsel's PCR testimony does not conflict with counsel's statement during argument before the South Carolina Supreme Court that he did not recall whether he had so informed Rocheville. It is perfectly understandable that when questioned during oral argument on an issue he was not expecting, the attorney would not immediately recall his advice on a certain issue; but, that does not indicate that the attorney was inconsistent when he later testified as to his actions after a period of time for reflection. Further, there was no contrary evidence to rebut trial counsel's testimony during the PCR proceedings, which the court found to be credible. Therefore, Rocheville has failed to rebut the presumption of correctness of the factual finding by the PCR court that counsel advised him of his right to give a final, personal closing argument at the end of the guilt phase. Accordingly, this court must accept that finding and conclude that Rocheville's claim--premised upon the failure of trial counsel to inform him of his right --lacks merit.

V.

Rocheville also argues that counsel was ineffective in handling matters relating to possible jury bias arising from pretrial publicity. Specifically, Rocheville maintains that counsel was ineffective in failing to adequately voir dire the jury to uncover possible prejudice

7

resulting from pretrial publicity and in failing to hire an expert in mass communication to assist in determining the possible effects on public opinion the pretrial publicity may have had in order to prepare for the motion for a change of venue.**4**

In order to prove a claim of constitutionally ineffective assistance of counsel, Rocheville bears the burden of demonstrating that trial "counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). In assessing counsel's performance, review is "highly deferential." Id. at 689. Indeed, a strong presumption is afforded that counsel's performance was within the extremely wide range of professionally competent assistance. See id. And, to eliminate the deceptive effects of hindsight, "the reasonableness of counsel's challenged conduct on the facts of the particular case[ must be] viewed as of the time of counsel's conduct." Id. at 690. Moreover, even those instances in which counsel's conduct fell below an objective standard of reasonableness generally will not justify setting aside a conviction unless the error affected the outcome of the proceeding. See id. at 691-92. Therefore, deficiencies in the conduct of Rocheville's attorney would amount to constitutionally ineffective assistance of counsel only if in the absence of unprofessional errors by his attorney there is a reasonable probability--i.e., one adequate to undermine confidence in the result--that "the result of the proceeding would have been different." Id. at 694. Furthermore, in assessing prejudice, it is important to focus on "whether the result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

_____

**4** To the extent that Rocheville argues that he was deprived of his Sixth and Fourteenth Amendment rights to an impartial jury and a fair trial because of inflammatory pretrial publicity, such claims are procedurally defaulted. Rocheville raised no such claims on direct appeal. Because they would not be entertained at this juncture in state court, and because Rocheville cannot establish cause and prejudice or a miscarriage of justice to excuse his default, the claims are treated as defaulted here. See Gray v. Netherland, 518 U.S. 152, 161-62 (1996).

Because the PCR court decided Rocheville's claim of ineffective assistance of counsel on the merits, pursuant to 28 U.S.C.A. § 2254(d)(1),**5** this court must determine whether the ruling against Rocheville constituted an unreasonable application of clearly established Supreme Court case law. See Green v. French, 143 F.3d 865, 890 (4th Cir. 1998), cert. denied, 119 S. Ct. 844 (1999). In this context, review involves a determination of whether"the state court[ has] decided the question by ... applying [Strickland] in a manner that reasonable jurists would all agree is unreasonable." Id. at 870.

We cannot conclude that the resolution of Rocheville's claim by the state PCR court was unreasonable. The PCR court noted that counsel's effectiveness in dealing with the issues of pretrial publicity must encompass a review of counsel's attempts to have the venue of the trial transferred and counsel's handling of voir dire and jury selection. The PCR court ruled that trial counsel's attempts to have venue changed were competent. Trial counsel filed appropriate pretrial motions, one seeking a change of venue and one requesting that a judge more familiar with the mood in Spartanburg County rule on the motion. During the hearing on the motion for change of venue, trial counsel supported the motion with the appropriate material, submitting numerous newspaper articles and video newscasts from the surrounding area relating to the murders, the victims, and Rocheville's coconspirator, Longworth. Further, trial counsel conducted an adequate voir dire. Over four days, counsel conducted extensive individual questioning. In selecting the jury, the defense utilized only seven of its ten peremptory strikes, suggesting that counsel was able to obtain a fair panel. In addition, the PCR court concluded that Rocheville had failed to establish any prejudice resulting from the

_____

**5** As amended by the AEDPA, § 2254(d)(1) provides in relevant part that a habeas petition

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C.A. § 2254(d)(1).

9

actions of trial counsel about which Rocheville complains. Rocheville has failed to demonstrate that these rulings were unreasonable.

VI.

During the guilt phase of Rocheville's trial, a police detective testified concerning the various statements that Rocheville gave about his involvement in the murders. Under questioning by the prosecutor about Rocheville's confession, the detective stated that after Rocheville confessed to having murdered Green, he immediately asked to speak to a public defender. Rocheville's trial counsel did not object to this testimony. In the state PCR proceedings, Rocheville claimed that this testimony constituted an improper and prejudicial comment on his invocation of his right to counsel and that counsel was ineffective for failing to raise this issue. The PCR court held that counsel was not ineffective for failing to object to the comments and that the brief references did not undermine confidence in the outcome of the proceeding.

This ruling was not unreasonable because the references to Rocheville's invocation of his right to counsel did not amount to a constitutional violation. The "mere mention" by a police officer in trial testimony of a defendant's post-arrest, post-<u>Miranda</u> invocation of the right to counsel is not unconstitutional. <u>Noland v. French</u>, 134 F.3d 208, 216-17 (4th Cir.), <u>cert. denied</u>, 119 S. Ct. 125 (1998). The prosecution did not suggest that Rocheville's invocation of his right to counsel was evidence of his guilt, and the police officer's trial testimony made only passing reference to Rocheville's invocation of right to counsel. Because the mention of Rocheville's invocation of his right to counsel did not amount to a constitutional error, the decision of the state PCR court that counsel was not ineffective for failing to object to the testimony was not unreasonable.

VII.

Rocheville next maintains that portions of the prosecutor's closing argument constituted an improper comment on Rocheville's failure to testify, in contravention of his right to remain silent. In addition, recognizing that he did not pursue this claim on direct appeal, Rocheville

10

argues that counsel was ineffective for failing to pursue the issue on direct appeal.

Both of these arguments, however, are procedurally defaulted. Rocheville did not raise the claim directly attacking the prosecutor's closing argument on direct appeal. In addition, Rocheville did not raise any issue related to the prosecution's closing argument until after the state PCR court had denied his petition. In his motion seeking to alter or amend the judgment, Rocheville raised for the first time a claim concerning the prosecutor's closing argument. The PCR court expressly ruled that the issue was defaulted due to Rocheville's failure to raise it timely. Because Rocheville cannot establish cause and prejudice or a miscarriage of justice to excuse his procedural default, this court cannot consider this claim. See Coleman, 501 U.S. at 750.

VIII.

Finally, Rocheville contends that his trial counsel was constitutionally ineffective for failing to retain experts to assist in his defense. First, Rocheville contends that the prosecution theory was that the murders were committed in an "execution style" and that if the murders had been committed as the prosecution argued, there would have been a large amount of blood on Rocheville, while in fact little or no blood was found on the clothing he was wearing. Rocheville asserts that trial counsel should have retained a blood-splatter expert to demonstrate this to the jury. Also, Rocheville argues that trial counsel should have retained an atomic absorption expert to explain to the jury that too much time had passed between the time of the murders and the time the swabs of Rocheville's hands were taken for tests designed to show whether Rocheville had fired a weapon to be reliable. Additionally, Rocheville maintains that a crime reconstruction expert would have been helpful to his defense.

At the PCR hearing, trial counsel testified that Rocheville had confessed his guilt to law enforcement officers and had admitted his guilt to counsel. As such, counsel believed that the best strategy was to admit to the shooting--to avoid angering the jury by contesting guilt --and to focus on developing mitigating evidence in the sentencing phase of the trial. Counsel further testified that he always did all of

11

his own investigatory work and that in light of the trial strategy, there was no need for experts in the areas identified by Rocheville.

The PCR court that heard these claims denied relief, reasoning that trial counsel's strategy was sound and did not amount to unprofessional conduct. This decision is not unreasonable, and hence Rocheville's argument does not provide a basis for habeas relief. See 28 U.S.C.A. § 2254(d)(1); Green, 143 F.3d at 870.**6**

IX.

We conclude that Rocheville has failed to make a substantial showing of the denial of a constitutional right. Therefore, we deny Rocheville a certificate of appealability and dismiss.

DISMISSED

_____

**6** Rocheville's remaining two arguments may be summarily rejected. We recently held that it is not appropriate to consider whether instances of ineffective assistance of counsel cumulatively prejudice the defendant. See Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998) (rejecting petitioner's argument "that the cumulative effect of his trial counsel's individual actions deprived him of a fair trial"). And, our decision in Truesdale v. Moore, 142 F.3d 749, 753 n.2 (4th Cir.), cert. denied, 119 S. Ct. 380 (1998), holding that procedural default principles remain effective after the enactment of the AEDPA, is binding on this panel.

12