23367

STATE of South Carolina, Respondent v. Ronald John ORR, Appellant.

(403 S.E. (2d) 623)

Supreme Court

*Chief Attorney David I. Bruck,* of *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *William Edgar Salter, III,* Columbia, and *Sol. John R. Justice,* of Chester, *for respondent.*

Heard Jan. 22, 1991.

Decided April 1, 1991.

CHANDLER, Justice:

Appellant, Ronald John Orr (Orr), was sentenced to death upon conviction of two counts of murder, two counts of armed robbery, burglary in the first degree, and grand larceny.
We reverse and remand for new trial.

## FACTS

On March 20, 1984, Orr stole his girlfriend's car and began driving south from Grand Rapids, Michigan; he stopped at a rural cabin in Ohio, stealing a .22 caliber handgun; after purchasing three boxes of ammunition, he continued southward, exiting Interstate 77 in Chester County, South Carolina; he looked for a place in nearby woods to sleep, but his car became stuck in the wet, soft ground; he wandered about for a "couple of days," until he came upon the home of an elderly Chester couple, John and Evelyn Corder.

After receiving Mr. Corder's permission to use the telephone, Orr unsuccessfully attempted to reach his father in Michigan; Mr. Corder then gave him a drink of water from an outside faucet; immediately thereafter, Orr shot Mr. Corder in the head four times; he then returned to the house, chased Mrs. Corder into a bedroom, where he shot her six times in the head, as she pled for her life.

Orr next stole food and money from the Corders' residence, then drove their 1984 Chevrolet to his vehicle in the woods, where he switched the license plates; he scraped off the South Carolina inspection sticker from the Chevrolet, and covered its auto dealership name with a Michigan wildlife bumper sticker; he then drove the Chevrolet to Michigan, where he was arrested on April 5, 1989.

At trial, following lengthy hearings, the court ruled that Orr, with an I.Q. of between 53 and 59, was competent to stand trial.[1] Orr did not testify, nor did he exercise his right to, personally, make an argument to the jury at either phase of his trial.

---

[1] Testimony at trial categorizes these I.Q. ranges between mild and moderate mental retardation.

## ISSUE

The sole issue we address is whether Orr's waiver of his rights (1) to testify and (2) to personally address the jury were knowing and voluntary.

## DISCUSSION

Counsel maintained throughout that Orr was not competent to stand trial. During the guilt phase, when asked by the trial court whether the right to testify had been explained to Orr, counsel responded, "such as we can."

Later, when the court advised counsel of Orr's right to make the last closing argument himself, counsel replied, "We have conferred with Mr. Orr and explained to him the best we can and he has . . . given us the indication that he doesn't want to say anything."

On the record before us we conclude Orr's waivers were not knowing and voluntary.

In *State v. Arthur*, 296 S.C. 495, 374 S.E. (2d) 291 (1988), we held that waiver of a constitutional or statutory right requires a showing on the record that the defendant made the waiver knowingly and intelligently. Citing the U.S. Supreme Court in *Patton v. United States*, 281 U.S. 276, 50 S. Ct. 253, 74 L. Ed. 854 (1930), we stated

> before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, *in addition to the express and intelligent* consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from the mode of trial or from any of the essential elements thereof, *and with a caution increasing in degree as the offenses dealt with increase in gravity.* (Emphasis in original.)

296 S.C. at 497, 374 S.E. (2d) at 293.

While *Patton* and *Arthur* involved the waiver of jury trial, the principle impacts with equal, if not greater, force here.

State concedes the right to testify is *constitutionally* protected by the due process clause of the Fourteenth

Amendment. *See, Rock v. Arkansas*, 483 U.S. 44, 107 S. Ct. 2704, 97 L. Ed. (2d) 37 (1987).

A defendant's right to make final argument, personally and/or by counsel, at both phases of a capital trial is statutory.[2] In *State v. Reed*,[3] we held that denial of this right, absent a showing on the record of a knowing and voluntary waiver, constitutes reversible error.

We hold that the knowing and voluntary waiver requirement must be satisfied by a full record. This may be established by colloquy between the court and the defendant himself, between the court and defendant's counsel, or both.

*State v. Arthur, supra,* is modified to the extent it implies that a court must establish the waiver solely by colloquy with the defendant himself.

As in *Arthur*, the necessity for a full and adequate record is heightened in the present case by Orr's mental retardation. We find the trial court's inquiry insufficient.

Accordingly, the convictions and sentence are reversed and the case remanded for a new trial.

*Reversed and remanded.*

GREGORY, C.J., and HARWELL, FINNEY and TOAL, JJ., concur.

---

[2] *See*, S.C. Code Ann. § 16-3-20(B) and 16-3-28 (1989 Supp.)

[3] 293 S.C. 515, 362 S.E. (2d) 13 (1987).