24139

Billy Joe CARTRETTE, Respondent v.
STATE of South Carolina, Petitioner.

(448 S.E. (2d) 553)

Supreme Court

*T. Travis Medlock, Atty. Gen., Joseph D. Shine, Chief Deputy Atty. Gen., Delbert H. Singleton, Jr., Asst. Atty. Gen.,* Columbia, *for petitioner.*

*Joseph L. Savitz, III, Deputy Chief Atty. Office of Appellate Defense,* Columbia, *for respondent.*

Submitted June 11, 1994.

Decided Aug. 15, 1994.

TOAL, Justice:

We granted certiorari to review the postconviction relief court's findings of ineffective assistance of counsel and granting of a new trial. We disagree and reverse.

## FACTS

Jerry Coleman attempted to rob Henderson Wood of the daily proceeds from his convenience store as Wood was getting into his car. Coleman shot Wood once, killing him instantly. In March 1984, Respondent Cartrette, along with Coleman and Paul Eugene Long, was indicted for criminal conspiracy, attempted armed robbery, and the murder of Henderson Wood. The State sought the death penalty and Cartrette was tried in a bifurcated trial pursuant to the South Carolina Death Penalty Statute, S.C. Code Ann. § 16-3-20 (1976). In April 1984, Cartrette was found guilty at trial on all three charges; however, during the sentencing phase, the jury was unable to reach a unanimous decision on the question of punishment. Consequently, the trial judge sentenced Cartrette to life imprisonment for murder, twenty years for attempted armed robbery, and five years for criminal conspiracy, all to be served concurrently.

Cartrette's convictions and sentences were affirmed under former Supreme Court Rule 23,[1] in our unpublished decision *State v. Cartrette,* Memo. Op. No. 85-Mo-182 (S.C. Sup. Ct.

---

[1] Currently found at Rule 220, SCACR.

filed Aug. 5, 1985). Following his direct appeal, Cartrette filed an application for postconviction relief alleging, *inter alia,* that he received ineffective assistance of counsel. On February 25, 1992, a postconviction relief hearing was held and on May 8, 1992, an Order was issued granting Cartrette's request for relief. The State now appeals the postconviction relief court's findings of ineffective assistance of counsel and the granting of a new trial.

## ISSUES

The State asserts two issues on appeal:

1. Did Cartrette waive his statutory right to make a final argument to the jury during the guilt phase of the trial?[2]

2. Was trial counsel ineffective for failing to request a jury instruction that the homicide was required to be a natural and probable consequence of the acts actually agreed upon by Cartrette and his co-defendants? *State v. Peterson,* 287 S.C. 244, 335 S.E. (2d) 800 (1985).

## LAW/ANALYSIS

### *Cartrette's Right to Final Argument*

Cartrette argues that he did not waive his statutory right to make a final argument to the jury during the guilt phase of the trial. In *State v. Torrence,* 305 S.C. 45, 406 S.E. (2d) 315 (1991) (Toal, A.J., concurring), we noted that the question of whether there was a waiver of last argument was most appropriate on PCR.[3] In *State v. Rocheville,* — S.C. —, 425 S.E. (2d) 32 (1993), we further emphasized that the waiver of last argument should be viewed in light of the

---

[2] At the time of Cartrette's trial, S.C. Code Ann. § 16-3-28 (1976) read: [I]n any criminal trial where the maximum penalty is death or in a separate sentencing proceeding following such trial, the *defendant or his counsel shall have the right to make the last argument.* (Emphasis added.)

[3] While not a post- *Torrence* case, Cartrette's trial predated our decisions in *State v. Orr,* 304 S.C. 185, 403 S.E. (2d) 623 (1991) (overruled on other grounds by *Torrence, supra*) and *State v. Reed,* 293 S.C. 515, 362 S.E. (2d) 13 (1987), (overruled on other grounds by *Torrence, supra*), each of which interpreted the 1986 Amendment to S.C. Code Ann. § 16-3-28 which provided: "The defendant *and* his counsel shall have the right to make last argument." (Emphasis added.) Moreover, *Orr, supra,* and *Reed, supra,* would only apply in the *in favorem vitae* setting, and because Cartrette received a life sentence rather than death, the appropriate forum must be in postconviction relief. *See Rocheville, infra.*

facts surrounding trial. The postconviction relief process is specifically designed to allow for an inquiry into the relevant facts surrounding the adequacy of a defendant's information and/or waiver of rights, and where this evidence is lacking, the appropriate remedy is to remand for a hearing to determine whether the defendant was apprised of his rights. *Id.*

Here, the record reveals that Cartrette was counseled on this right. Further, the record shows a strategic decision by the defense to not have Cartrette make the last argument. At the postconviction relief hearing, trial counsel was asked:

> Q. Prior to the trial did you and Mr. Long have a discussion with Mr. Cartrette concerning his constitutional rights in this case, and primarily that being the opportunity for him to argue before the jury during summation?
> A. ... [t]hroughout the preparation, yes, there was discussion with him, of course, about his—he had already— we already knew that he was going to demand trial by jury for capital murder, so you don't sit down and tell him, "Oh, you've got a right to trial by a jury." He knew that. He knew that he had a right to take the stand or not to take the stand, and, quite frankly, up until the Gerald Hooper [a cellmate to whom Cartrette made certain admissions of culpability] situation arose, there was a question about how we were going to handle whether he was going to take the stand or not, and he knew that. Now, with regard particularly to the situation of him making a statement at the guilt stage, which was basically a strategy determination, there had been discussions with him. We knew right up at the last minute that, yes, he was going to have to—to take the stand. Not only did we know it, he knew it. ... Now with regard to actually making a statement before or in the presence of the jury at the argument stage was a very dangerous thing to do because it could undermine everything that we had been attempting to do at that point because you still had a jury sitting out there that was going to take instructions from the Court and make a decision, and just let him say the wrong thing then, so in my opinion it would have been a very dangerous thing to do.

THE COURT: Did he know he had the right?

THE WITNESS: As I recall, he did because he wasn't too—he didn't feel, al I recall, all that comfortable about testifying . . . there was no question but that Mr. Long had specific conversations and specific attempts, not only in explaining to him taking the stand but what he had to present, how he had to act, and whether or not he wanted to make statements, so hopefully that answers the question.

Q. It does. It does.

A. Because I can tell you this. There was again another discussion, and I know this because I participated in it, about whether he wanted to make a closing statement before the jury at the sentence stage.

Q. And what did he decide to do?

A. He said, "Yes."

THE COURT: Did he make a statement?

THE WITNESS: Yes, he did. Yes, sir.

The record clearly establishes that Cartrette was aware of his right to last argument and that during the guilt phase, Cartrette chose not to exercise that right. In our opinion, there is absolutely no evidence which would support the post-conviction relief court's findings. *Gallman v. State*, 307 S.C. 273, 414 S.E. (2d) 780 (1992) (wherein a postconviction relief judge's findings will not be upheld if the findings are not supported by probative evidence).

### State v. Peterson Instruction

Cartrette argued at the postconviction relief hearing that his trial counsel was ineffective in failing to request a jury instruction that a verdict of murder would require a finding that the homicide was a natural and probable consequence of the acts actually agreed upon by Cartrette and his co-defendants. *State v. Peterson*, 287 S.C. 244, 335 S.E. (2d) 800 (19850. We disagree.

In *State v. Peterson, supra,* we held that: [d]uring the penalty phases of death penalty cases which involved conspiracy liability, the trial judge should charge that the death penalty can not be imposed on an individual who aids and abets in a crime in the course of which a murder is committed by others, but who did not himself kill, at-

tempt to kill, or intend that a killing take place or that lethal force be used.

*Id.* at 247, 335 S.E. (2d) at 802. Our decision in *Peterson* relied heavily on *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed. (2d) 1140 (1982). In *Enmund*, the United States Supreme Court held that the imposition of the death penalty on a person who did not personally take a life, attempt to take a life, or intend to take a life would be violative of the Eighth and Fourteenth Amendments of the United States Constitution. With our *Peterson* decision, we embraced this rule for application in South Carolina.

The original dates of Cartrette's trial were April 6, 10, 11, 16 through 20, and 23 through 27, 1984. Cartrette's direct appeal was affirmed under Rule 23, in *State v. Cartrette*, Memo. Op. No. 85-Mo-182 (S.C. Sup. Ct. filed Aug. 5, 1985), and the decision in *Peterson, supra,* was handed down on October 14, 1985. Even though the decision in *Enmund, supra,* was the basis for *Peterson,* it was not formally adopted or accepted as the rule in South Carolina until after Cartrette's trial and appeal.

At trial, counsel argued *Enmund, supra,* for the proposition that Cartrette lacked the requisite intent for conviction since the killing was not a natural or probable consequence of the robbery. While the trial court denied counsel's request to give such an instruction based on *Enmund, supra,* trial counsel's performance could not be deficient since the appropriate request was made under the then-existing state law precedent.[4] In *Thornes v. State,* — S.C. —, 426 S.E. (2d) 764 (1993), we recognized that a trial counsel could not be required to foresee future changes in the law. Here, trial counsel argued the law as it existed at the time of trial which is well within the objective standard of reasonableness announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. (2d) 674 (1984). *See also Robinson v. State,* 308 S.C. 74, 417 S.E. (2d) 88 (1992).

Even assuming *arguendo* that the instruction mandated by *Peterson, supra,* was applicable at the time of trial, the actual instruction given at trial was virtually identical to an instruc-

---

[4] In fact, *Peterson, supra,* which would have required the trial court to comply with counsel's instruction request, would not be decided for another year.

tion we upheld as complying with *Peterson, supra. Thrift v. State,* 302 S.C. 535, 397 S.E. (2d) 523 (1990).

The trial judge initially charged that jury, in relevant part, as follows:

> [T]here is a proposition of law of aiding and abetting, and I charge you, when two or more persons acting with a common design, or intent are present at the commission of the crime, it matters not by whose immediate hands or agency the crime is committed. All are equally guilty. The hand of one is the hand of all, but there must have been a common design, or an intent to commit the crime, and the crime must have been committed pursuant thereto. Mere presence alone is not sufficient. There must be a design or intent.

(App. p. 1206, line 24-p. 1207, line 9.)

The jury returned from their deliberations to ask for reinstruction on murder and aiding and abetting. (App. p. 1224, lines 10-13.) The trial judge repeated the previous instruction and added the following:

> Now, I charge you further, that if two or more people combine together to commit an unlawful act, and in the execution of the criminal act, a homicide is committed by one or more of the actors as a probable and natural consequence of the acts done, in the pursuance of the common design, all present, participating in the unlawful undertaking are as guilty as the one who committed the fatal act.

(App. p. 1225, lines 1-8.)

The instruction given at Cartrette's trial was substantially the same as the instruction given in *Thrift, supra,* and it equally comports with *Peterson, supra,* and *Enmund, supra.* As with the first issue, there is no evidence to support the postconviction relief court's findings. *Gallman, supra.*

Accordingly, the decision of the postconviction relief court to grant a new trial is REVERSED.

CHANDLER and MOORE, JJ., concur.

FINNEY, J., dissenting in separate opinion.

HARWELL, C.J., not participating.

FINNEY, Justice:

I respectfully dissent. In my opinion, respondent is entitled to a new trial as found by the PCR judge.

The state asserts the PCR judge erred in finding that Cartrette received ineffective assistance of counsel because counsel did not request a jury charge that the homicide was a natural and probable consequence of the acts actually agreed upon by Cartrette and his co-defendants. I disagree.

The majority opinion overlooks the following crucial facts. Cartrette testified that he conspired only to commit a nonviolent property crime. Cartrette maintained that Coleman told him that they were going to break into the trunk of a car in which a large amount of money was kept. Further, Cartrette stated that prior to the incident there had never been any discussion about robbing anyone. He was only supposed to drop off Coleman and Long near Wood's car and wait for them while they broke into it. While the robbery was taking place, Cartrette remained in his car, away from the crime scene.

The trial judge charged the jury, in pertinent part, as follows:

> [T]here is a proposition of law of aiding and abetting, and I charge you, when two or more persons acting with a common design, or intent are present at the commission of the crime, it matters not by whose immediate hands or agency the crime is committed. All are equally guilty. The hand of one is the hand of all, but there must have been a common design, or an intent to commit the crime, and the crime must have been committed pursuant thereto. Mere presence alone is not sufficient. There must be a design or intent.

The jury returned from their deliberations to ask for reinstruction on murder and aiding and abetting. The trial judge repeated the previous instruction and added the following:

> Now, I charge you further, that if two or more people combine together to commit an unlawful act, and in the execution of the criminal act, a homicide is committed, by one or more of the actors, as a probable and natural con-

sequence of the acts done, in the pursuance of the common design, all present, participating in the unlawful undertaking are as guilty as the one who committed the fatal act.

The jury returned again and asked "Do all parties involved have to have malice and aforethought (sic) to be guilty of murder?" The judge explained, "the hand of one is the hand of all." A juror requested that he again repeat the definition of aiding and abetting and murder. The judge repeated the second instruction above.

The PCR judge found that Cartrette was deprived of a fair trial due to counsel's failure to request an instruction that the homicide was a natural and probable consequence of the acts *actually agreed upon* by Cartrette and his co-defendants. *See State v. Peterson*, 287 S.C. 244, 335 S.E. (2d) 800 (1985); *State v. Crowe*, 258 S.C. 258, 188 S.E. (2d) 379 (1972).[1] Further, the PCR judge found that:

> Because of the failure to request this instruction, the court permitted the jury to convict [Cartrette] of murder merely by finding: (1) that [Cartrette] had combined with another to commit the non-threatening crime of breaking and entering of an automobile; and (2) that [Cartrette's] accomplice thereafter took a life without [Cartrette's] prior knowledge, approval or assistance. The failure to have a proper instruction on this issue before the jury clearly prejudiced [Cartrette's] right to a fair trial.

Our holding in *Thrift v. State*, 302 S.C. 535, 397 S.E. (2d) 523 (1990), seemingly modifies *Peterson* by holding that a charge similar to the second instruction given here substantially complies with the rule in *Peterson*. However, *Thrift* is distinguishable on the facts. Thrift expected a potentially violent encounter and he admitted that he was armed and knew his co-defendant was armed and the victim would at least be "roughed up." In this case, there was evidence that Cartrette conspired only to commit a nonviolent burglary.

Further, considering that certain portions of the instructions dealing with aiding and abetting were recharged several

---

[1] I note that *Peterson* is not new law as it was based on the Court's decision in Crowe.

times without any comment as to the requirement of a "natural and probable consequences" finding, the charge was confusing and prejudicial to Cartrette.

In reviewing a grant of PCR, this Court must affirm the ruling of the PCR judge if there is any evidence to support the decision. *Cherry v. State*, 300 S.C. 115, 386 S.E. (2d) 624 (1989). To establish a claim of ineffective assistance of counsel, the applicant must show that counsel's performance was deficient and that he was prejudiced by such deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. (2d) 674 (1984).

In my view, there is evidence to support the PCR judge's finding of prejudice to Cartrette as a result of counsel's ineffective assistance. *Cherry v. State, supra.* Accordingly, the PCR judge properly ruled that Cartrette is entitled to a new trial on this issue.

I would affirm the PCR judge's granting of relief.