552 S.E.2d 718

Ellis FRANKLIN, Respondent/Petitioner,

v.

William D. CATOE, Director, South Carolina Department of Corrections, Petitioner/Respondent.

No. 25353.

Supreme Court of South Carolina.

Heard Nov. 14, 2000.

Decided Aug. 27, 2001.

Rehearing Denied Sept. 28, 2001.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, for petitioner/respondent.

Kenneth M. Suggs, of Suggs & Kelly, P.A., of Columbia, and David P. Voisin, of Center for Capital Litigation, of Columbia, for respondent/petitioner.

TOAL, Chief Justice:

The State appeals the post conviction relief ("PCR") court's order granting Ellis Franklin ("Franklin") a new trial on his capital murder charge. Franklin cross appeals the PCR court's ruling that he was not entitled to a new trial on his non-murder charges. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

In January of 1993, Franklin was found guilty of murder, burglary in the first degree, grand larceny, and criminal sexual conduct in the first degree. In the penalty phase, the jury found four statutory aggravating circumstances and recommended a death sentence. The trial judge sentenced Franklin to death for murder, to ten years for grand larceny, to thirty years for criminal sexual conduct, and to life imprisonment for burglary. This Court affirmed these convictions on direct appeal. *State v. Franklin*, 318 S.C. 47, 456 S.E.2d 357 (1995). Franklin's petition for writ of certiorari to the United States Supreme Court was denied. *Franklin v. South Carolina*, 516 U.S. 856, 116 S.Ct. 160, 133 L.E.2d 103 (1995).

Franklin then filed for PCR on March 14, 1996. An evidentiary hearing was held on January 27, 1998. The evidentiary hearing was limited to the following allegations in Franklin's petition for relief:

1. Applicant did not knowingly or intelligently waive his right to address the jury at the conclusion of the guilt phase of his capital trial as guaranteed by S.C.Code Ann. § 16–3–28 (Supp.2000) and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

2. Applicant was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and South Carolina law by the following acts and omissions of trial counsel:

Counsel failed to explain to applicant that he had the right to address the jury at the conclusion of the guilt/innocence phase. *See* S.C.Code Ann. § 16–3–28.

On October 2, 1998, the PCR judge entered an order granting Franklin post conviction relief and requiring a new

trial on all the charges. The State then moved to alter or amend the judgment asserting the non-murder charges of burglary, grand larceny, and criminal sexual conduct charges should not be affected by the alleged error and should be reinstated. On February 12, 1999, the PCR judge granted the State's request to limit relief to Franklin's murder conviction. Both parties appealed. This Court granted certiorari as to the State's Questions I and II and Franklin's Question II, and the following issues are before this Court:

I. Did the PCR court err by finding Franklin did not waive his statutory right to make a personal closing statement in the guilt phase of his trial?

II. Assuming there was no waiver of Franklin's statutory right to make a closing statement in the guilt phase, did the PCR court err by granting a new trial because Franklin did not show he was prejudiced under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.E.2d 674 (1984) or Rule 61, SCRCP, by the lack of waiver?

III. Did the PCR court err by denying relief on Franklin's non-capital convictions after finding he had not knowingly and intelligently waived his right to address the jury during the guilt phase of his trial and after finding that counsel was ineffective for not advising him of that right?

## LAW/ANALYSIS

### I. Waiver

█ The State argues the PCR court erred in holding Franklin did not knowingly and intelligently waive his statutory right under S.C.Code Ann. § 16–3–28 to make a personal closing statement during the guilt phase of his capital murder trial. We disagree.

█ On October 2, 1998, the PCR court granted Franklin post conviction relief on the ground he did not knowingly and intelligently waive his statutory right to make an argument in the guilt phase of his trial.[1] In reviewing a grant of post conviction relief, we are "concerned only with whether there is any evidence of probative value to support the PCR judge's

---

1. The trial court did obtain an on-the-record waiver during the penalty phase of the trial.

decision." *Palacio v. State,* 333 S.C. 506, 512, 511 S.E.2d 62, 65 (1999); *Skeen v. State,* 325 S.C. 210, 481 S.E.2d 129 (1997). Therefore, the PCR court's findings should be affirmed if there is "any probative evidence" to support the court's findings. *Palacio, supra.*

Section 16–3–28 provides: "Notwithstanding any other provision of law, in any criminal trial where the maximum penalty is death or in a separate sentencing proceeding following such trial, the defendant and his counsel shall have the right to make the last argument." Before the abolition of *in favorem vitae* review, we held in *State v. Orr,* 304 S.C. 185, 403 S.E.2d 623 (1991), a capital defendant was entitled to reversal of his conviction where the trial judge failed to obtain an on-the-record waiver of the defendant's statutory right under section 16–3–28. *See also State v. Cooper,* 312 S.C. 90, 439 S.E.2d 276 (1994); *State v. Reed,* 293 S.C. 515, 362 S.E.2d 13 (1987), *overruled in part by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991).

 After *in favorem vitae* review was abolished, we stated the appropriate forum for addressing this issue was a post conviction relief proceeding "where the facts surrounding the trial can be fully explored." *State v. Rocheville,* 310 S.C. 20, 25, 425 S.E.2d 32, 35 (1993); *Cartrette v. State,* 323 S.C. 15, 448 S.E.2d 553 (1994); *State v. Torrence, supra.* We found "[t]he post conviction relief process is specifically designed to allow for an inquiry into the relevant facts surrounding the adequacy of a defendant's information and/or waiver of rights . . ." *Cartrette,* 323 S.C. at 18, 448 S.E.2d at 555. Therefore, under the current law, a petitioner for post conviction relief may no longer rely solely on the trial record to demonstrate the lack of waiver. The PCR court should analyze all the facts surrounding the trial to determine if a petitioner knowingly and intelligently waived his rights under section 16–3–28.

The trial record, PCR transcript, affidavits, and depositions support the PCR court's finding that Franklin did not knowingly and intelligently waive his right. There was no *on-the-record* waiver of Franklin's statutory right to personally address the jury at the end of the guilt phase. At the conclusion of the guilt phase, the trial court merely stated the order of closing arguments, but did not mention a defendant's right to

address the jury. After reviewing the record, we cannot find any reference to Franklin's rights under section 16–3–28 until the penalty phase of the trial.[2]

Testimony at the PCR hearing further supports Franklin's argument that no waiver occurred. Two defense attorneys represented Franklin in his initial trial. Although it was not their first murder trial, it was the first capital case tried by either attorney. One of Franklin's attorneys testified he did not know at the time of trial a defendant had the right to make a closing argument in the guilt phase and did not advise

---

2. During the *penalty* phase of the trial the following colloquy between the defense and the court occurred:

THE COURT: [W]hile we're doing it I want him to understand that he also has the right—*as he did at the last phase* he has the right to make an argument along with you or Mr. Carraway, whoever makes the argument. He has the right to speak to the jury as well and I need to know whether or not he, you know desires to do that. I want to make him aware of it, know he's aware of it—*was aware before* but I want to make sure he was aware of it *again* at this stage ... I want to know—be sure that he understands that he has a right to do both [testify and argue] ... (emphasis added).

THE COURT: All right, sir, and the same is true of your closing argument. Mr. Barr or Mr. Carraway will make the last argument. The state has to argue first in this portion of the trial, and your lawyers or lawyer has the right to argue last just like he did in the last portion of the trial *and you have the same right.* You've got the right—*just like you did before*—you've got the right to stand before the jury at this time—at the end of this phase of the trial—and tell them anything you want to tell them about yourself or about anything about the facts of the case or anything that you want to say you've got the right to do it.

And I just want to make you aware of that fact and would like to know before—before—we make final arguments I would like for you all to come and let me know what his intention is just before you make the argument. I don't want to pin him down now. I'll let him think about it but I'm going to—I need to know whether he's waiving his right or whether he wants to do it before it happens. That's the thing I've got to get on the record. (emphasis added).

After these remarks by the court, neither defense counsel made any comment or took any action which would indicate they were receiving this knowledge for the first time. The State argues this inaction by Franklin's attorneys speaks volumes about their actual knowledge at that time. The State further contends this penalty phase inquiry was sufficient to appraise and to verify the preexisting knowledge of Franklin and his counsel of the right as it existed in the guilt phase. We find this passing reference in the *penalty* phase does not imply Franklin waived his right during the *guilt* phase. The judge's comments were too little and too late.

Franklin he had such a right. He stated if he had known of the right, he "would have advised [Franklin] that was his right and certainly would have left it up to him to make a decision regarding what he wished to do." Co-counsel testified similarly. He stated at the time of the trial he was not aware of the guilt phase statutory right. He further stated he personally did not advise Franklin of this right, and, to his knowledge, his co-counsel had not either. Former solicitor Wade Kolb, the prosecutor in Franklin's case, also testified at the PCR hearing. He stated he did not specifically hear the trial court discuss a defendant's rights under section 16-3-28 with either defense counsel or Franklin. Finally, Franklin testified before the PCR judge. He stated neither of his counsel ever informed him of a statutory right to make a closing argument in the guilt phase.

Therefore, there is ample probative evidence to support the PCR court's finding that Franklin did not waive his right to make a personal argument during the guilt phase of the trial. The PCR court was correct in finding Franklin did not knowingly and intelligently waive his right under section 16-3-28.

## II. Prejudice

The State argues the PCR court erred in granting Franklin a new trial because Franklin did not show he was prejudiced under *Strickland* by the lack of waiver. We agree and hold Franklin should have been required to show prejudice under *Strickland.*

In order to prevail in a PCR action, an applicant has to satisfy a two prong test.[3] First, he must show his counsel's

---

3. Franklin asserts two separate grounds for relief: (1) ineffective assistance of counsel; and (2) denial of his right under section 16-3-28. We analyze under the *Strickland* prejudice standard, however, the same result would be reached under the harmless error standard. An error is harmless where it could not reasonably have affected the result of the trial. *State v. Reeves,* 301 S.C. 191, 391 S.E.2d 241 (1990). Although the *Strickland* prejudice standard arguably places a greater burden on the defendant than the showing required to obtain reversal on direct appeal, the overwhelming evidence of guilt, as discussed below, negates any claim that the denial of Franklin's right under section 16-3-28 could have "reasonably affected the result" of his trial.

performance fell below an objective standard of reasonableness. Secondly, he is required to prove he suffered prejudice as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.E.2d 674 (1984); *Johnson v. State*, 325 S.C. 182, 480 S.E.2d 733 (1997). To prove prejudice, an applicant must show there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* Franklin has met his burden as to the first prong of the test by showing his counsel did not apprise him of his rights under section 16–3–28 and did not object to the trial court's failure to obtain a waiver. The State contends Franklin must also prove prejudice in this case, while Franklin argues South Carolina case law provides he is not required to show prejudice in this instance. We find Franklin is required to prove prejudice.

Franklin is correct in observing that prior South Carolina cases have not undertaken a prejudice analysis when holding the defendant was entitled to a new trial on the ground the court failed to obtain a waiver of allocution rights under section 16–3–28. However, this is the first case which addresses this issue on post conviction relief.[4] In *State v. Reed*, 293 S.C. 515, 362 S.E.2d 13 (1987), we reversed defendant's murder conviction on the ground he did not knowingly and intelligently waive his right to make a personal closing statement. This Court stated, "Speculation as to whether appellant was prejudiced by being denied his right to final argu-

---

The dissent argues a violation of a statutory right, in this case of section 16–3–28, should be analyzed under a different standard than other PCR claims. This Court has never made such a distinction. In analyzing a PCR claim, this Court applies a *Strickland* prejudice standard. As discussed below, this Court in *Torrence, supra,* abolished *in favorem vitae* review in part because of its faith in the PCR system. The Court held that where counsel fails to object to an error committed during trial, PCR would be the proper and effective forum for a defendant to bring his claims. In a PCR proceeding, the applicant has always had the burden of demonstrating prejudice. This Court has never made a distinction between failure to object to a statutory violation and failure to object to any other type of error.

4. Although it could be argued that a harmless error analysis is also appropriate on direct appeal, note that in *Cartrette* and *Rocheville*, this Court stated a PCR proceeding was the appropriate forum for addressing the issue of voluntary waiver under section 16–3–28, therefore in the future, the issue is unlikely to be addressed on a direct appeal.

ment is inappropriate in this situation." *Id.* at 518, 362 S.E.2d 13. Additionally, in *State v. Orr,* 304 S.C. 185, 403 S.E.2d 623 (1991), *State v. Charping,* 313 S.C. 147, 437 S.E.2d 88 (1993), and *State v. Cooper,* 312 S.C. 90, 439 S.E.2d 276 (1994), we held that failure to obtain a knowing and voluntary waiver of the statutory rights under section 16–3–28 was alone ground for reversal. In none of these cases did the Court undertake a prejudice analysis.[5]

However, all of these cases were decided before our decision in *Torrence, supra,* where this Court abolished *in favorem vitae* review of death penalty cases. As discussed in detail in *Torrence,* the reasons and basis for the Court's adoption of *in favorem vitae* review no longer exist. When *in favorem vitae* review was established, the appellate review system did not include a post conviction relief system. Presently, with such a system in place, the Court reasoned, "In situations where an objection is not made due to alleged ineffective assistance of defense counsel, we hold the more preferable method of exploring this issue is via the avenue of an application for post conviction relief." *Torrence,* 305 S.C. at 66, 406 S.E.2d at 326. In the instant case, Franklin's counsel failed to make an objection, and the proper review of this alleged error is in an application for post conviction relief. In a post conviction proceeding, the applicant's burden has always been to demonstrate prejudice. *Strickland,* supra.

The facts of the instant case are a clear illustration why due process is not offended by, and public policy supports, the application of a prejudice analysis to this type of statutory error. First, we note the harmless error rule and a prejudice analysis are no strangers to cases involving the death penalty. For example, the United States Supreme Court has approved the application of a harmless error analysis in death penalty cases even when a defendant's constitutional rights have been violated. *See Yates v. Evatt,* 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991) (jury charge on malice unconstitutionally shifted the burden of proof from the State to the defendant, nonetheless the constitutional violation was subject to harmless error analysis); *Arizona v. Fulminante,* 499 U.S. 279, 111

---

5. The PCR court's order relied on these cases when holding Franklin did not have to show prejudice in order to be entitled to relief.

S.Ct. 1246, 113 L.Ed.2d 302 (1991) (admission of an involuntary confession subject to a harmless error analysis); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (harmless error analysis used where state prosecutor's argument and trial judge's instruction continuously and repeatedly impressed to the jury that since defendant refused to testify, all the inferences from facts in evidence had to be drawn in state's favor). Our Court has also acknowledged the appropriateness of a harmless error analysis even when a defendant's constitutional rights have been violated. *See Arnold v. State,* 309 S.C. 157, 420 S.E.2d 834 (1992), *cert. denied,* 507 U.S. 927, 113 S.Ct. 1302, 122 L.Ed.2d 691 (1993) (in this death penalty case, the malice instruction was found to be in violation of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), thus unconstitutional, but subject to harmless error standard).

Second, we note this error occurred during the guilt phase, where the jury is confined to determining whether Franklin committed the crime, not whether he deserved the death penalty. Had Franklin been apprised of his right to address the jury during closing, and had he chosen to do so,[6] he would have been arguing for his innocence, not pleading for his life. However, the jury had already heard Franklin argue for his innocence when he testified in his own defense. Franklin testified he had consensual sexual intercourse with the victim on the date of the murder, but he denied killing the victim. Therefore, the jury had the opportunity to hear and consider Franklin's side of the story. The fact that Franklin did appear before the jury during the guilt phase, even if his appearance was not during the closing, demonstrates due process and fundamental fairness were not offended by the error.

Third, it is important to note the policy behind a harmless error and prejudice analysis. These rules are rooted in the fundamental goal of the criminal justice system—that no

---

[6]. Even if Franklin was aware of his right to argue, it is unlikely he would have chosen to do so. Franklin's attorneys testified they did not think Franklin should personally address the jury during the penalty phase since he did not make a good impression on the jury during his guilt phase testimony.

citizen forfeit his life or liberty unless found guilty beyond a reasonable doubt. As discussed below, it is clear beyond a reasonable doubt the correct man was found guilty of this crime. Based on a review of the evidence presented, we can find no evidence whatsoever the jury would have rendered a different verdict had the error not been made.

Finally, the evidence of guilt in this case is overwhelming. The facts in brief are as follows. Victim Jennifer Martin and family members attended a cousin's wedding earlier in the day. Thereafter, Jennifer visited her grandmother, then drove to her mother's house about 11:00 p.m. to use the telephone. Her mother left the house shortly before Jennifer arrived. Jennifer had a ten minute conversation with her fiancé, beginning at 11:13 p.m. Shortly after midnight, less than 45 minutes after the victim had spoken with her fiancé, police found Jennifer's car abandoned across town with the engine running and the lights on. Police determined ownership, proceeded to the mother's house, and discovered Jennifer's badly battered, partially nude body. She had been raped, violently beaten, and sexually assaulted with a broomstick. The post mortem examination demonstrated that Jennifer suffered many pre-mortem injuries. The photographs introduced at trial showed extensive pre-mortem injuries, and these injuries led the jury to find the aggravating circumstance of physical torture. Franklin's own testimony placed him at the scene of the crime. It is impossible to believe a reasonable juror could find the violent brutality of this murder to be the result of consensual sex, as Franklin claimed. Furthermore, Franklin's bloody palm print was left on the fan that crushed the victim's head. DNA analysis confirmed the semen found on the victim's body belonged to Franklin. Necklaces belonging to the victim were found in Franklin's possession. Blood on Franklin's pants matched the blood found on the fan and victim. Considering the evidence of guilt and malice outlined above,[7] Franklin's testimony in front of the jury, and his attorney's closing argument, there is no

---

7. For a more detailed discussion of the evidence of guilt and malice displayed by Franklin at the crime scene see *State v. Franklin,* 318 S.C. 47, 456 S.E.2d 357 (1995).

reasonable possibility Franklin's failure to make a personal closing argument to the jury during the guilt phase of his trial contributed in any way to his convictions.

In conclusion, we find a prejudice analysis is appropriate for the error committed in this case.[8] To the extent *State v. Orr*, *State v. Cooper*, *State v. Charping*, and *State v. Reed* hold differently, they are overruled. Since there is no reasonable probability that but for counsel's deficient performance, the result of Franklin's trial would have been different, we find Franklin suffered no prejudice. We reverse the PCR court's order granting Franklin a new trial.[9]

### III. Non–Murder Convictions

Franklin argues the PCR court erred in denying him relief on his non-murder convictions of burglary, grand larceny, and criminal sexual conduct after finding he had not knowingly and intelligently waived his right to address the jury at the close of the guilt phase. In light of our holding above, reinstating Franklin's murder conviction, it is not necessary to reach the merits of Franklin's argument.

---

8. The dissent argues imposing a prejudice analysis places a "virtually insurmountable obstacle" in the way of a convicted capital defendant. While there may be some instances where prejudice may be presumed because of the nature and circumstances surrounding the error, this is not one of those rare instances. The error in this case occurred during the guilt phase of Franklin's trial. Had he exercised his statutory right under section 16–3–28 during the guilt phase, he would have argued for the jury to believe his side of the story. As discussed previously, Franklin exercised his opportunity to testify and tell the jury his side of the story. The jury received all the overwhelming evidence, including Franklin's own testimony, and rendered a verdict of guilty. Nothing in the facts or circumstances surrounding this guilt phase error makes a prejudice analysis inappropriate or a "virtually insurmountable obstacle."

Furthermore, as discussed previously, both the Unites States Supreme Court and this Court have held a harmless error analysis is appropriate where a capital defendant has suffered a deprivation of a *constitutional right*. It is hard to reason why a statutory right, enacted by our state legislature, should be given a higher importance than rights guaranteed by the Constitution of the United States.

9. For further policy arguments concerning the appropriateness of a prejudice analysis in this case see *Charping, supra* (Goolsby, AAJ, joined by Justice Toal, concurring in part and dissenting in part).

## CONCLUSION

For the foregoing reasons, we **REVERSE** in part the findings of the PCR court and reinstate Franklin's murder conviction.

MOORE, WALLER and BURNETT, JJ., concur.
PLEICONES, J. dissenting in a separate opinion.

PLEICONES, Justice:

We granted cross-petitions for certiorari to review a post-conviction relief (PCR) order granting respondent-petitioner (Franklin) a new trial on his capital murder charge but denying him relief on the other three convictions [10] arising out of his death penalty trial. The majority reverses the order granting Franklin relief and therefore does not reach the remedy issue he raises. I would grant Franklin a new trial on the murder charge only, and therefore respectfully dissent.

### A. *State's Petition*

The PCR judge found, and the majority agrees, that Franklin was never informed of his statutory right to argue to the jury during the guilt phase of his trial. *See* S.C.Code Ann. § 16–3–28 (Supp.2000). Based on this finding, the judge granted relief on two grounds:

(1) Franklin's trial counsel's performance was ineffective in violation of the sixth amendment; [11] and

(2) Franklin's conviction was obtained "in violation of the . . . laws of this State. . . ." [12]

As explained below, I agree that Franklin cannot prevail on his ineffective assistance claim. I would hold, however, that the violation of state law which occurred here compels us to grant a new trial.

---

**10.** Franklin was convicted of murder, first degree burglary, first degree criminal sexual conduct, and grand larceny. *See State v. Franklin*, 318 S.C. 47, 456 S.E.2d 357 (1995).

**11.** U.S. Const. amend. VI.

**12.** *See* S.C.Code Ann. § 17–27–20(a)(1)(1985).

### i. Ineffective Assistance

In order to obtain relief on an ineffective assistance of counsel claim, a PCR applicant must establish both that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Brown v. State*, 340 S.C. 590, 533 S.E.2d 308 (2000). In this case, there is no question but that Franklin's trial attorneys performed below professional norms. Their admitted failure to review the applicable statutes when they undertook to represent this individual charged with capital murder should undermine our confidence in the integrity of our judicial system. No defendant, most especially one facing the death penalty, should be afforded such perfunctory representation.

Franklin's sixth amendment claim also requires that he demonstrate prejudice, that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052. Even where, as here, counsels' performance has deprived the defendant of a substantive or procedural right to which the law entitled him, he must establish *Strickland* prejudice in order to prevail. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see Brown v. State, supra.* Whether there is a reasonable probability that, but for the error the result would have been different, is a fact-intensive inquiry. *Strickland v. Washington*, 466 U.S. at 695–96, 104 S.Ct. 2052. I agree with the majority that, given the overwhelming evidence of Franklin's guilt, there is no reasonable probability that a jury would have returned a not guilty verdict had Franklin been informed of, and chosen to exercise, his statutory right to argue to the jury.

I therefore concur in the majority's opinion insofar as it reverses the grant of PCR because of a sixth amendment violation.

### B. *Violation of State Law*

We are free to decide the statutory violation issue under the standard we deem appropriate. I would hold that when a

capital defendant is denied the opportunity to exercise a statutory right afforded him by our death penalty statutes,[13] we must reverse.

In my opinion, we must honor the General Assembly's prerogative to establish the procedural safeguards which it deems necessary to the fair administration of the death penalty. Where the legislature has prescribed a departure from the procedures observed in "ordinary" criminal trials, those deviations should be scrupulously honored. I would thus not engage in a prejudice analysis where the undisputed facts do not demonstrate a conscious waiver or strategic decision to forego one of the special protections mandated by the capital statutes. When a capital defendant is deprived of the opportunity to exercise one of these statutory rights, whether through ignorance or design, I would hold that justice requires we grant a new trial.

Even if we were to require a showing of prejudice, Franklin has met that burden here. In four prior decisions, we have granted relief to capital defendants who suffered this same delict. *See State v. Cooper*, 312 S.C. 90, 439 S.E.2d 276 (1996); *State v. Charping*, 313 S.C. 147, 437 S.E.2d 88 (1993); *State v. Orr*, 304 S.C. 185, 403 S.E.2d 623 (1991); *State v. Reed*, 293 S.C. 515, 362 S.E.2d 13 (1987). In all four cases, the reversals resulted from this Court's *in favorem vitae* review. By definition, the error was found to be inherently prejudicial. *See e.g., Drayton v. Evatt*, 312 S.C. 4, 8, 430 S.E.2d 517, 519 (1993)("*In favorem vitae* review requires us to painstakingly inspect capital cases to determine whether prejudicial error has been committed in a trial...."). We subsequently abandoned our rule of automatic reversal where no waiver of this right to address the jury appeared on the record, recognizing that a collateral inquiry may reveal a knowing, intelligent, and voluntary waiver. *See e.g., State v. Rocheville*, 310 S.C. 20, 425 S.E.2d 32 (1993) (where trial record is silent on waiver of right to address jury in guilt phase, issue may be fully explored at PCR to determine whether defendant was adequately informed of right but chose to waive it for strategic reasons); *see also Cartrette v. State*, 323 S.C. 15, 448 S.E.2d 553 (1994).

---

13. S.C.Code Ann. §§ 16–3–20 through –28 (Supp.2000).

In *State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991), this Court agreed to abolish the doctrine of *in favorem vitae* because, among other things, the adoption of the Uniform Post Conviction Relief Act [14] in 1969 and the revitalization of the great writ of habeas corpus in 1990 [15] assured that "[O]ther mechanisms of protection and of relief have now been created for the [capital] defendant which safeguard [him] and render the protections afforded by *in favorem vitae* surplusage." *Id.* at 61, 406 S.E.2d at 324.[16]

In my opinion, if we are to safeguard the rights of the capital defendant and follow our precedents, then the only issue before this Court is whether there is any evidence of probative value in the record to support the PCR judge's finding that Franklin did not waive his statutory right to address the jury at the close of the guilt phase of his trial. *Humbert v. State*, 345 S.C. 332, 548 S.E.2d 862 (2001)(Shearouse Adv. Sh. No. 23 at p. 64); *State v. Rocheville, supra.* I disagree with the majority's decision applying the *Strickland* prejudice standard to our analysis of this state law issue. The effect of imposing this requirement is to place a virtually insurmountable obstacle in the way of a convicted capital defendant who has been deprived of one of these statutory rights.[17]

### B. *Franklin's Petition*

Franklin contends the PCR court erroneously limited relief to the murder charge alone. I disagree. *See State v. Cooper, supra; State v. Charping, supra* (both reversing only the

---

**14.** S.C.Code Ann. §§ 17–27–10 through –160 (1988 and Supp.2000).

**15.** *See Butler v. State,* 302 S.C. 466, 397 S.E.2d 87 (1990).

**16.** Among the other grounds advanced for the abolition of the doctrine was "the advances in the quality of legal representation." *Id.* at 60, 406 S.E.2d at 324. As this case demonstrates, we must not assume that capital defendants will necessarily be afforded competent representation.

**17.** Since the ultimate sanction is reserved for the "worst of the worst," it will be a rare death row inmate who can demonstrate a "reasonable probability" of a different outcome where, for example, the statutory waiting period required between the guilty verdict and the commencement of the penalty phase is not observed, or even where separate sentencing and penalty hearings are not held.

murder conviction for lack of a waiver of the right to closing argument in the guilt phase).

## Conclusion

For the reasons given above, I would affirm the issues raised in the State's petition and the issue raised in Franklin's petition. Accordingly, I would affirm the PCR order granting a new trial on the murder charge only.