*670 CHIEF JUSTICE PLEICONES:
I agree that we must reverse and remand the Post-Conviction Relief (PCR) order because the PCR judge abused his discretion in denying respondent-petitioner’s (Winkler’s) request for a continuance. I write separately because I would uphold the PCR judge’s finding that trial counsel were ineffective in failing to ask the trial judge to respond to the jury’s inquires relating to the effect of a non-unanimous verdict. Thus, I would hold that Winkler is entitled to a new sentencing proceeding[18] even if on remand he is unable to establish reversible error on the mental health issue.
I begin by noting that the majority approaches this case as if the burden were on Winkler, rather than on the State, to persuade the Court of reversible error in the PCR judge’s ineffective assistance of counsel ruling and that this error pervades its analysis. Even where the State is the petitioner, our standard of review requires that we affirm the PCR judge’s factual findings if they are supported by any evidence of probative evidence in the record. E.g., Roberts v. State, 361 S.C. 1, 602 S.E.2d 768 (2004). Further, as explained below, I believe the majority errs when it converts the PCR judge’s factual conclusions into an error of law.
The PCR judge found that a reasonable attorney would have objected to the trial court’s refusal to answer questions raised by the jury’s notes asking what would happen if they could not reach a unanimous verdict. The majority holds that the PCR judge’s ruling was affected by an error of law because there was no state or federal precedent which would have supported a request by trial counsel that the jury be instructed that a deadlocked jury would result in a life sentence. I believe that the PCR judge’s order is more nuanced than the majority acknowledges. In finding counsel’s performance deficient, the PCR judge held:
*671 Even if the jury is not entitled to an instruction that the defendant will receive a life sentence if they cannot reach a unanimous verdict of death, the jury is entitled to an instruction that the defendant’s sentence becomes a matter of law to be imposed by the court if they cannot reach a unanimous verdict. During the Allen[19] charge by the judge in this case, the jury was informed that the verdict must be unanimous. However, S.C. Code Ann. § 16-3-20 does not require the jury to reach a unanimous verdict. It only requires a unanimous jury verdict if the death penalty is to be imposed.
As I read the order, the PCR judge held that this jury should have been instructed that the result of their inability to reach a unanimous verdict would be to make the sentence a legal issue to be decided by the judge.
In finding legal error here, the majority relies on State v. Adams, 277 S.C. 115, 283 S.E.2d 582 (1981) overruled on other grounds by State v. Torrence, 305 S.C. 45, 406 S.E.2d 315 (1991), and State v. Copeland, 278 S.C. 572, 300 S.E.2d 63 (1982) as the state precedents. Both of these older cases stand (if they continue to stand at all) for the proposition that a capital sentencing jury need not be instructed before beginning deliberations on the effect of a non-unanimous verdict. The federal precedent relied upon by the majority is a United States Supreme Court decision deciding the same pre-deliber-ation issue under the Eighth Amendment. See Jones v. United States, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). Here, of course, we are not dealing with a pre-deliberation instruction request nor with an Eighth Amendment claim, but rather with the question whether due process required this jury’s mid-deliberation questions be answered truthfully. The majority acknowledges these three cases are distinguishable, but states there are three reasons why “that difference does not change our decision.” In my opinion, none of these three reasons creates an error of law in the PCR judge’s finding that trial counsel were deficient.
The first reason given by the majority is that in 1989, the Fourth Circuit (interpreting Virginia law), held that “no obli *672 gation exists for the trial judge to inform the jury of the ultimate result should they fail to reach a verdict.” Evans v. Thompson, 881 F.2d 117 (4th Cir. 1989). The Evans jury asked whether a life sentence must be unanimous, and Evans asserted that his due process rights were violated when the jury was instructed that their “verdict must be unanimous as to either life imprisonment or death” rather than being instructed that “a split decision ... automatically becomes life....” Id. at 128. Winkler’s jury, however, did not ask whether a life sentence must be unanimous but instead sent two notes. The first, sent after six hours of deliberation, read:
Could you please explain what happens if we’re not able to reach a unanimous decision?
The trial judge interpreted the question, without objection, “to be one of academic interest” and answered with a note stating “I cannot answer the question the way you have phrased it; if you have any questions let me know.” Two hours later, the trial judge sent a note to the jury asking “do you have any questions or messages for the court?” The jury responded asking “What [does] the law state when a jury does not reach any unanimous decision at this stage of the trial?” The judge responded with this note: “I cannot answer hypothetical questions. Do you have any specific questions to ask or comments that you would like to make about your jury?”[20]
In my opinion, it is a stretch to equate the question asked by Evan’s jury, whether a life sentence must be unanimous, with the questions asked by Winkler’s jury, which was obviously struggling with the consequences if they are unable to return a unanimous verdict. In any case, it is even more of a stretch to say that Winkler’s trial counsel were reasonable to rely on a Fourth Circuit case—of which there is no evidence they were aware—in deciding not to ask the trial judge to answer the jury’s questions. Moreover, the PCR judge did not hold that trial counsel were deficient for failing to ask for an “automatic life” charge as in Evans, but rather held that a *673 charge to the effect that the sentence would become a matter for the court should have been given. The issue before us is whether there is any evidence to support the PCR judge’s finding that reasonable counsel would have asked for an instruction, not whether we can find a twenty-five year old federal case interpreting the law of a different jurisdiction that would arguably support their decision not to make such a request. Roberts, supra.
In my opinion, none of the cases relied upon by the majority are precedents that excuse a reasonable advocate operating under prevailing professional norms from requesting that this jury’s repeated questions be answered. Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (ineffectiveness standard in death penalty sentencing PCRs). Instead, Winkler’s trial attorneys allowed his jury to be told their questions were merely “hypothetical,” non-specific, and not capable of being answered.
The majority’s second reason why this case is different is, to me, the most concerning. The majority holds the difference here is that unlike the three cases which it cites, the present case is not a direct appeal. Were it in this procedural posture, we would answer the question whether, under the facts and circumstances of this case, the jury’s inquiries should have been answered. Instead, since this is “only” a PCR, the question is not whether the capital defendant’s due process rights were violated, but instead merely whether his trial counsel acted reasonably. As explained below, I cannot countenance what I see as the Court’s continued devaluation of the constitutional rights of capital defendants. In 1991, a majority of the Court abolished the doctrine of in favorem vitae which had required the Court to search the record in a capital appeal for legal error. State v. Torrence, supra. The majority of the Court justified the abolition of this common law doctrine in large part because of the protections afforded capital defendants by the Uniform Post-Conviction Procedure Act. That PCR is a poor substitute for in favorem review, however, was made explicit in Franklin v. Catoe, 346 S.C. 563, 552 S.E.2d 718 (2001), In Franklin, the capital PCR applicant contended trial counsel were ineffective in failing to inform him of his statutory right to argue to the jury in the guilt phase of his trial. The Franklin majority acknowledged that the applicant *674 had been denied this statutory right, and that prior to the abolition of in favorem, this error would have warranted a new trial. The Franklin majority held, however, that with PCR “replacing” in favorem review, a capital defendant now bore the burden of proving not only error, but also constitutional prejudice. Today, with its second reason, the majority highlights the unfulfilled promise of Torrence. I cannot agree that we should afford less protection to capital defendants who are forced to litigate claims of constitutional deprivation in PCR than to those whose trial counsel preserve these issues for direct appeal.
The third reason advanced why the PCR judge’s ruling must be reversed is that “there is little possibility that answering [this] jury’s question[s] could assist the jury in deliberations.” I cannot agree that this jury would not have been aided in its deliberations had it been told that the law would resolve the sentencing issue if it were unable to reach a unanimous decision. Further, this third reason seems to me a “difference” directed not at the question whether counsel were deficient, but rather whether Winkler was prejudiced by the non-answers given to his jury. Finally, I find unpersuasive the majority’s stated concerns that answering this jury’s questions might have diverted a juror from her duty to deliberate, or caused her to realize her ability to control the situation by refusing to do so. The issue before us is not whether jury’s should be given a pre-deliberation charge on the effect of their failure to reach a sentencing verdict but whether jurors who repeatedly raise questions should be told the truth. In my opinion, the majority’s concerns reflect a lack of faith in our jurors, and in the jury system as a whole.
Turning back to the question of deficient performance, in Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), the United States Supreme Court held the capital defendant’s due process rights were violated when his jury’s question regarding parole eligibility was not answered, leaving them to reasonably believe he would be released on parole if not executed. Here, the failure to answer this jury’s questions reasonably led them to believe either (1) that they had no option but to return a unanimous verdict of life or death, thereby coercing them, or (2) that the consequence of a failure to agree on one of these two choices would result in an *675 entirely different sentence, that is, a term of years or probation, leaving Winkler in a similar situation to Simmons. What other conclusions could the jury draw from being told that their inquiries as to what would happen should they not reach a unanimous verdict was merely “hypothetical,” and not capable of being answered? While Simmons may not decide the exact due process issue raised by the facts of this case, I find a reasonable death-qualified attorney operating under prevailing professional norms would have seen the analogy, and used Simmons to argue for the judge to truthfully answer this jury’s questions. Therefore, in my opinion, there is evidence to support the PCR judge’s factual finding that counsel were deficient here. Roberts, supra.
It troubles me greatly that the majority uses cases that, by its own candid admission, are “different” to excuse counsels’ failure to ask that the jury’s questions be answered. This is especially so in a capital case where both the legislature and this Court have recognized the need for specially qualified trial counsel for indigent defendants such as Winkler.[21] The prevailing professional norms of these specialized practitioners require they recognize, litigate, and preserve for appeal novel issues, be aware of current capital jurisprudence, and challenge precedents either directly or through analogy.[22]
In my opinion, we must uphold the PCR judge’s factual findings that trial counsel were deficient in failing to ask for jury instructions that addressed the jury’s questions, that as a result Winkler’s due process rights were violated, and his legal conclusion that Winkler was prejudiced. Roberts, supra.
Winkler’s jury’s recommendation of death was not the result of measured deliberation, but rather the product of significant jury preoccupation and confusion with what would occur should they not reach a unanimous verdict, compounded by *676 the court’s refusal to treat its questions as valid. Accordingly, in my opinion, Winkler is entitled to a new sentencing hearing even if he does not otherwise establish his entitlement to this relief on remand on his claim of ineffective assistance for failing to present evidence of neurological and cognitive impairment.
BEATTY, J., concurs.

. I agree with the majority that the appropriate relief here is a new sentencing proceeding, and that the PCR judge erred in sentencing Winkler to life. See Singleton v. State, 313 S.C. 75, 437 S.E.2d 53 (1993).

. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed, 528 (1896).

. The jury subsequently sent a note saying they were struggling to reach a unanimous decision, and were given their first Allen charge at 12:26 am, more than twelve hours after they began deliberations. The jury left without continuing deliberations and returned at 9:15 am the next day, requested they rehear the Allen charge, and following that exited the courtroom, returning a verdict at 10:14 am.

. See S.C. Code Ann. § 16-3-26(B)(l); (F) (2016); Rule 421, SCACR; see also Guideline 8,1, ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003); State v. Bames, 407 S.C. 27, 753 S.E.2d 545 (2014) (dissent discusses need for specially qualified capital trial attorneys to help address the "heightened reliability” requirement of capital sentencing).

. Cf„ "[T3he law is not always clear and never is static.” Commt. 1 to Rule 3.1, Rule 407, SCACR.